Two leading questions, three words in answer, eight letters altogether. That was entirely the proceeding that this judge conducted before deciding there was good cause to excuse a lone holdout juror between Mr. Wilson and a conviction that's carried a lifetime. You have to give those words some context, don't you? Sure. She said something about it's been stressful. It's been stressful. She's had a difficult time. I've been crying. I've been crying. I can't sleep. I can't sleep. And then when the judge, a few sentences later, when the judge asks you, you're telling me you're unable to deliberate, she says, I can't. Now, why can't the judge accept, you know, if you take the context of that when the juror is in the courtroom and he's listening to her and observing her and he's, why can't he accept that? He can't accept that because we have to consider the context. The context was this was the sole holdout juror. He didn't know that, though, right then. Well, he had a pretty good idea. He knew when she came in the courtroom that morning that there had been a verdict that the jury had reached, had notified the court that they had reached a verdict, I think, because he says that during that during that colloquy, he at some point that the jury had arrived at a verdict. That's correct. All right. Then she indicates that she's not sure of that verdict, which at that point is a very strong. And certainly both counsel and the judge later on took that inference to be that she was she might change her mind. And they appeared to also understand it was a guilty verdict. By the way, you know, one thing that kind of I wasn't quite clear on. But was the judge that took the verdict, the same judge that presided over the trial? No, he was not. It was a judge from down the hall subbing in sort of babysitting the jury deliberations. This occurred on a Monday. I think the trial concluded Wednesday previous and deliberations had gone on Wednesday, Thursday and Friday. When was the verdict? What's the date of the verdict? The verdict was that Monday after the date is April 6, 1998, but it was taken that Monday. What happened was they called the jury back in and attempted to take the verdict. This one juror at issue said, no, that's not my verdict anymore. The judge then summarily excused her. I mean, when when did the jurors vote? It appears, though it's not clear, it appears that the verdict was taken was late Friday before the weekend. That was not taken, but that was when the jury notified the judge that they had arrived at a verdict. And then she apparently over the weekend, over the weekend, you know, hey, this is not really what I want. She said it arrived at a verdict. Did they put that verdict in a sealed envelope and give it to the clerk? Where was the judge then? I don't know. I suspect what happened is it came in late Friday and rather than pulling the jurors in, they just sent everyone home. The record doesn't show anything. But that would be sort of informed speculation. But the record would record would show when the court recessed on Friday. Yeah. Shows a recess at noon on Friday. Where was the judge? The record doesn't show that. That's what I was asking, because I noticed that the judge presiding over the trial was Judge Cherovsky. Right. And Judge Simpson took the verdict. Yes. Another judge took the verdict, which led me to think that perhaps Judge Cherovsky was unavailable in the afternoon and they had to get somebody to come in on Monday. That's possible, but it's not indicated in the transcript. But in any case. No, but I mean, it was obviously something Judge Cherovsky was not available on that Monday to take the verdict. Perhaps Judge Cherovsky, having more vested in this trial, might have conducted a little bit more search and inquiry rather than this. So if you read this, it's just very cursory. The verdict was signed at noon, you say. I mean, they arrived at a verdict. They arrived at a verdict. There's a reference to arriving at a verdict. There's nothing in the record on that Friday that indicates that there was a verdict arrived. The only reason we know that is that when they go through this colloquy on Monday, there's some reference to, oh, you reached a verdict last week. And so that suggests that they reached a verdict on that Friday. They reached a verdict on Friday and the judge was not around. The judge was not available. Then he wasn't available on Monday. That's correct. Another judge came in. And over the weekend, she thought about it, was upset with her verdict, her vote. Mr. Tanaka, what's your best case for the proposition that there's a clearly established Supreme Court case that was violated in this case? I think this Court's recent case in Sanders v. Lamarck, Your Honor, is pretty close to establishing this case and establishing the proposition that. Well, Lamarck is a little bit different. Certainly it's a little different, but. It's more than a little different. It's a lot different. It's not a Supreme Court case. No. But certainly it stands for the proposition that the Supreme Court, in Irvin v. Dowd, I guess, is the seminal case here and would be the case that we would rely on for being contrary to clerical Supreme Court authority, which establishes the very simple proposition that the Sixth Amendment requires a fair and impartial jury. And what Sanders glossed on that is that when you, when the judge excuses or removes the loam-hull-out juror, that is the height of impartiality. You have one juror who is voting not to convict, not guilty. They remove that person. And that's, by definition, a major jury partial. I probably agree with you. That's a fair proposition. But you see that proposition nowhere in a Supreme Court case, do you? That's correct, Your Honor. And unfortunately, the ADPA is written in such a manner. But if you follow that literally, then there could be hardly any cases that you find a constitutional violation, because obviously the Supreme Court decides but a handful of cases every year. And there's certainly going to be, depending on the level of generality of abstraction. You don't think that was the purpose of the statute? Well, I think it's they don't want you, they don't want this court or a lower district court making new law and extending their doctrine. But it seems to me it's not very much of a reach to say that removing the loam-hull-out juror without good cause leads to an impartial, leads to a partial jury and violates your right to an impartial jury. Well, I think we've certainly said that. But the problem is, you know, it does seem to me to be an extension of the Supreme Court case law, although, you know, there is circuit authority to that effect. And certainly there's not going to be a Supreme Court case on very many issues that come before this Court involving the constitutional. That's going to be exact on all fours. That's why we have litigation. If it were that clear, then there would never be an appeal. Or you wouldn't have a right to an appeal, basically. But obviously, at some level, I mean, the Supreme Court will set down a general standard, and then you decide whether it's contrary to that general standard. There's, I mean, there's frequent cases. In Lamarck, it went off on the basis that there was an unreasonable determination of the facts with respect to the reasons given for removing the juror.  An unreasonable determination of the facts. I think that we have an analogy. Now, do you contend here that there was an unreasonable determination of the finding of good cause by the trial court? Yes, I do. What do you point to? I point to the... Why was it objectively unreasonable for the Court to determine that good cause did not exist to excuse her? Just because of the limited nature of the inquiry. There was no real inquiry here, Your Honor. The judge... I can't continue to deliberate on any issues. Not on its face. In this context, no. In the context where you have a loam-hulled juror, that is simply not good enough. It's sort of like my son coming to me and saying... My son came in on a Friday. The judge who presided over the trial was not there. And he wasn't there on Monday. And on Monday, the new judge, the replacement judge, he got word that there was a problem with the jury, with one juror. And then they brought her out, and she said that she'd been crying over the weekend, that she'd been upset about this verdict, and that she basically couldn't go along with the verdict. Because they have to poll the jury. You have to say, is this your verdict? You have to say yes or no. And she was going to say no. And that meant that there was a hung jury. And so what the judge did, he said, can you deliberate? She said no. Well, that could have meant that her mind was made up. And that he talked about conscience too, and that she could not in good conscience find this person guilty. And that he removed her, and he put an alternate on. The alternate was in there for a short time, 90 minutes, and boom. That's the 12th vote, and that was it. That's about what happened. I agree that's a fair statement, Your Honor. And back to Judge Piazza's point, when she says she can't, that can mean any number of things. My son says to me, you know, I can't do my homework. It doesn't mean that he's not able to do his homework. It means it could mean that, but it could mean, and I think it meant in this case as well, given the context, that I don't want to do that. Well, it was clear that she didn't want to do that. Well, I think, turning to what Judge Tashima asked earlier, what Supreme Court case would you rely upon that says that the district court judge, I mean that the trial court judge didn't go far enough? Well, what we're getting back right now is unreasonable determination of the facts. Now, you sit and look at this and you decide, did he reasonably determine that there was good cause? And I submit that, no, he was unreasonable in making that determination simply because he came in and it was clear that they were going to get rid of this juror. This juror said barely anything. This juror indicated difficulty with the verdict, difficulty with finding this man guilty. And for that reason, you would want to exercise more care. You don't want a summary proceeding when you have so much at stake. The Irvin v. Dowd is a Supreme Court case that says you have a right to an impartial jury. That's a very important principle. This man was facing a very serious sentence, and he deserved more than to have it. Do you think the substitute judge was trying to achieve a guilty verdict? I think he was trying to achieve a verdict. He was trying to achieve a guilty verdict on count one. Well, in context, yes, because he knew the verdict was for guilt, and he knew that if he let this person, if he kept this person on the jury, he didn't have that verdict. So, yes, in that sense, I'm not saying that, you know. As it turned out, he didn't get a verdict. Even with the alternate, he didn't get a verdict on one of the counts. No, but he certainly got a verdict. They found him not guilty on the other count. But he certainly got a verdict on this count. Yes. That's correct. And we submit that that was not a partial jury that rendered that verdict. And that would be clearly contrary to Supreme Court authority. All right. Thanks. Good morning, Your Honors. My name is Susan Kimper, Respondent. Just to respond to Mr. Tanaka's. Can you speak up a little more loudly, please? Of course. To respond first to Mr. Tanaka's argument that the State Court of Appeals' opinion was an unreasonable determination of the facts, if I could direct Your Honors to the excerpt of records around page 72 to 74, where the trial court and juror number three, which is a juror in question, have this discussion about her inability to deliberate. And juror number three asked the trial court to get off this case because of too much stress that she had been crying and can't sleep. Then the trial court asked, you believe that fairness requires that you leave the case at this time? And juror number three replied, yes, very clearly. The trial court then asked, and you don't want to deliberate any further on any of the other issues? Juror number three then responded, I can't. The record clearly shows that any more extensive inquiry was not needed because the trial court was there in the best position to observe juror number three. Before you go on now, do you think at this point the trial judge knew that, in effect, juror number three was the lone holdout? I believe the trial judge – I believe the records indicate that the trial judge knew that she, at this point, he didn't know that whether she was either for guilty verdict or not. But he knew that she was holding out against the other jurors, I believe. And she was the only one who was holding out. Yes, I believe that is correct. Whichever way, you know, the others went. Yes. How do we know that? How do we know that he knew? I believe the record, if I may just have a moment, indicates that on excerpt 72 to 73, the trial court says we've reached a verdict and the jurors have reached a verdict. I don't know what it is or what it's about, but that is what I was told. And juror number three says, I'm not sure if I made the right decision. And – That's a hint to the judge that – I believe – That she's having – But I believe that the record indicates that there is definitely something where this juror is having problems where the other jurors are not. And if I may continue about – so basically looking at the record – Well, he knew that there had been a unanimous verdict on Friday. He knew only that there was a verdict reached by the jury. Well, it had to be unanimous, right? He assumed that it was, but on Monday when the other trial judge – When they said there's a verdict on Friday, he knew that was a unanimous verdict. I believe – he believed that it was unanimous. Well, I mean, wouldn't anybody believe that? Yes, that is correct, Your Honor. So then he comes here on Monday, and she says she's having all these problems in her conscience in one thing or another, and that she'd been struggling with this, and she wants to get off. Certainly that would indicate that she disagreed with the other 11 jurors. Yes, that would probably indicate to the trial judge at that time. Indicate that they're headed for a mistrial. Not necessarily that, but I believe on Monday when the new trial judge came, he did pull the jury. And at that point, it was clear that she – the verdict that she had, the Friday verdict, which she was a part of, she was not going to go along with her initial vote. And also, just to note that regarding – You know, that's – I've had trials that one juror hung up, you know, after four months. Given that factual – You start all over again. Given that factual situation, then, Ms. Kim, how is this case different from the Smith v. Lamarck? Is it Sanders v. Lamarck? Sanders v. Lamarck, Your Honor? Excuse me. Sanders. Yes. Well, Sanders is very different from this case because the juror that was eventually discharged in Sanders was not discharged because of her inability to deliberate or because of any type of bias or prejudice. She was dismissed by the trial judge after the trial court decided that the juror did not fully and honestly and thoroughly answer questions during Gwadir regarding, I believe, her son's possible gang involvement when the sons were younger, plus whether she lived in a gang area about 20 to 25 years earlier, the area which was where the crime occurred in the Sanders case. And so the – But this is what the opinion depends upon, though, on – let's see, what are we looking at? I'm looking at page 948. Under the circumstances presented here, the trial court committed constitutional error when, after learning that the juror was unpersuaded by the government's case, it dismissed the lone holdout juror. In other words, you know, the basis of finding constitutional error was that this was the lone holdout juror, not, you know, these other things that you're speaking about. If I may just clarify, Sanders actually is – refers to a more relevant case to our case, Perez v. Marshall, which I cited in my brief, which is much more like this case where the juror in that case was dismissed because she had, quote, emotional instability, which prevented her from being able to deliberate, and the trial judge dismissed her on that basis. And I believe this court – Correct. The jury reached a verdict on that case. I do not believe so. Well, that's critical. That is different, but the general – That's critical. That is very important, Your Honor. However – It's critical. Okay. It is critical, Your Honor. However, in the Perez case, like in this case, the trial judge properly discharged the juror even for good cause, because there was good cause in the Perez case because of emotional instability, and in this case because of extreme stress that led to both jurors not being able to deliberate. Regardless of the fact that the trial judge knew that – She did deliberate. She – She did deliberate. On Friday – The stress, it seemed to me, came on over the weekend, where her conscience started to bother her. Did I do the right thing? That's when she got distressed. That's when she couldn't sleep. And she apparently made up her mind that that was not going to be her verdict. That is true, Your Honor. And that she didn't think further deliberations were anything she wanted to go through. She didn't want to get out of the room and get beat up by 11 people. Well, the trial – the state trial judge in this case was there to observe juror number three, and after listening to her responses and her statements – Kevin was just in there a short period of time. He was just – he was just coming in to take care of another judge's work who probably went on vacation. But he was the one that was there to question the juror about – Yeah, but he didn't ask too many questions, did he? I believe that it was because the trial judge believed that the responses were clear enough that the juror could not deliberate due to her extreme stress. And given that the trial judge's factual findings weren't tied up to special deference, I believe that in this case that is – He just wanted to get a verdict in this case. Well, actually – All the trial judges want to get verdicts. They've got a lot of other cases, you know. Just one interesting note in the Sanders case. Sanders actually referred to the Perez case and said that in Perez what was important was that the district court in Perez found that the trial judge was not trying to get a guilty unanimous verdict, but that the actual reason for discharging the jury was because the juror could not deliberate due to the emotional instability. But she already deliberated. But – She was upset because – with her vote on Friday. Yes, referring – I actually was referring to the Perez case, Your Honor, how in Sanders the Sanders court referred to the Perez case and specifically said that in Perez what was really important was the fact that the district court in Perez found that the state trial judge was not trying to get a guilty unanimous verdict. And that is exactly what happened in this case. The district court in this case specifically said in the reporting recommendation – well, adopting the reporting recommendation of the magistrate judge that the state trial judge here was not trying to get a unanimous guilty verdict. The state trial judge dismissed jury number three because she was unable to deliberate due to her extreme stress. And I think that is very important in not only distinguishing this case from Sanders, aside from the other factual distinguishing things in Sanders. And the fact that in this case the record clearly shows – Was there a hearing here? There was no hearing, Your Honor. There was a hearing here. There was no hearing in this case. There was no hearing.  He was looking at a cold record, as they say. I believe the district court promptly gave the appropriate deference to the state trial court as well as the California Court of Appeals state findings that there was good cause based on the juror's extreme stress, Your Honor. Well, it was a little odd that the judge didn't at least call in the foreperson of the juror to sort of get a feel for what was – I suppose each judge does things differently in his or her courtroom. And in this case, I believe that the state judge did what he felt was enough. And he was there to hear the response. The rest of them don't feel that way. By the way, the state didn't petition for cert in Sanders, did they? No, they did not. They did not? They did not. I know the deputy who handled the Sanders case, and they did not petition for cert in that case. See, I also had experience as a trial judge in the superior court. Yeah, I used to do about, oh, a thousand felonies a year, more than that. Wow. Yeah. Well, unless runners have any other questions, respondent is ready to submit on the briefing. Thank you, Your Honors. I just want to make two additional points. First, with regard to the trial – the state's statement just now that the trial judge was not trying – dismissed the juror due to stress and not because he was trying to get a verdict. I think that's shown demonstrably to be untrue by the record. They did not dismiss the juror until she went and confirmed the verdict. Had she gone along with that verdict, they were going to keep the juror and keep the verdict. It wasn't only – it was only after. If you went on – if you went along with the verdict, I mean, that would be the end of the case. Well, no, they still had. Another count? Yeah, a couple more counts, Your Honor. Did the judge know that they had – that they were unable to agree on the other counts? I don't know. That is not at all clear from the record. Just they only knew that he had a verdict on something. On some count. And it was clear, though, that he was going to keep that juror if she would confirm that verdict, the guilty verdict, and get rid of her only if she did not. And that's exactly what happened. Well, what does she say about that? They didn't poll the jury, did they? Yeah, they did. They did poll. It's okay. I, you know, got a lot of cases. Just tell me that. But that's what happened. Just tell me they polled a jury. And then she said that wasn't my verdict any longer. Was then, not now. Well, she said yes, then. Not today or somewhere. Not today, yes. Yes, then, but not today. Okay. So she clearly disavowed it. And then the second point is that with regard to the reasonable determination of the facts in comparing this case to Sanders, again, it's really important that you consider the context. This is at a stage where we know that there's one juror who's voting not guilty or looks like she's going to change her vote to not guilty. And at that point, the judge has a special case. And just like if that inquiry in Sanders had happened during voir dire, no one would be complaining. Let me ask you this. What if when she said, you know, in the courtroom, he said, well, I'm going to, I find good cause and I'm going to excuse you right now before he even brought the jury back to take the verdict? Would you be here today? If she'd just come in. Just after the colloquy with her. And she says, I can't. And he says, I find good cause. You're excused. I'm going to put in an alternate. Go back in and continue to deliberate. And there had been before the verdict. In other words, he means before the jury poll. Yeah. After they reached a verdict. No, no, no, no. He comes in. She comes back on Monday morning. Right. It says it says here and says it has a conference with the judge in the courtroom. My only question. At one point she says he asked her, can you you know, you don't want to deliberate. And she says, I can't. What if he then had said, I find good cause. I'm going to excuse you, juror number three. You're out of here. I'm going to put an alternate in. Put the alternate in. They go back and deliberate. And 90 minutes later, they have a verdict. Would you be here today? If one, there hadn't been a verdict. I don't think so. And two, the judge had no indication that this juror was a whole head of. It's the same record. The same record here. Just same colloquy. Just after at the end of the colloquy with her when she says, I can't. He said, ah, good cause. I'm going to excuse you. Too stressful. You're out of here. Take an alter. Put the alternate in. They go into the jury room. 90 minutes later, they come back. I got a verdict. Yes. Are you here today? Yes. And the salient point. OK. Why is that? He knows she's a holdout juror. She just confirmed at the polling. But at that point, if he knows that she's a holdout juror, then it's not good cause. So the answer is probably. But I think you have a little bit weaker case. You know, we don't know for sure that she was going to. She was a holdout juror. But it's sort of like that. That makes it closer to the Simington case, I think. Yes. Thank you. Yeah. You got to have a fallback position in life. I'll take it. All right. Interesting case. Yeah. Thanks for coming here. Take number four. Four. And United States versus.
judges: Pregerson, Tashima, Paez